GENERAL AMERICAN LIFE INSURANCE COMPANY, A CORPORATION, RE-
SPONDENT, v. REES W. BARTON AND ARTIE E. BARTON, APPEL-
LANTS.—125 S. W. (2d) 886.

Kansas City Court of Appeals.   December 5, 1938.

*H. E. Sheppard* and *J. A. Silvers* for respondent.

*C. E. Groh, James A. DeArmond* and *Crouch & Crouch* for appellants.

CAMPBELL, C.—This action was brought March 30, 1933, by the Missouri State Life Insurance Company to recover the balance alleged to be due on notes executed by the defendants to International Life Insurance Company on August 16, 1926. Defendant, Rees W. Barton, husband of his codefendant, was employed by the latter company in 1922 and continued in its employ until its property was purchased by the former company in August, 1928. Barton continued in the employ of the Missouri State Life until he was discharged by it in March, 1929.

The pleaded defense was fraud in the procurement of the notes; the prayer was for the cancellation of the notes. The cause was tried by both parties upon the theory it was in equity. The judgment was for the plaintiff for $1398.66, from which defendants have appealed.

Rees W. Barton testified he was employed as above stated; that in 1926 he went to see A. H. Carter, head of the investment department of the International Life Insurance Company, concerning increase in salary; that Carter proposed if he, Barton, would buy a farm in Chariton County, Missouri, owned by the company, his salary would be increased from $200 to $350 per month and that from such salary he could pay $150 each month on the purchase price; that he purchased the land for $10,000, $500 of which was paid in cash, the balance, $9,500, evidenced by notes executed by himself and wife, which notes were secured by deed of trust.

"Q. At the time you made this deed and you and your wife executed exhibit 12 were either you or your wife familiar with this farm? A. No, sir.

"Q. Now, after that did you have any conversation with Mr.

Carter about a contract, a written contract of employment? A. Yes, sir.

"Q. Tell us about that? A. He said he couldn't give a contract for only one year at a time, but he said he would hire me until the farm was paid for.

"Q. Did he tell you about the law prohibiting him making it for longer? A. Yes, that is what he said, the insurance department.

"Q. Did you make any investigation to know whether or not that was true? A. No, sir.

"Q. Did you consult any attorney about that? A. No, sir.

"Q. State whether or not you relied on that statement of Mr. Carter? A. I did. I worked for the company and I relied on what he told me about my job.

"Q. How long did this situation work out according to your agreement? A. Well, it worked out until the end of the International regime, until Mr. McReynolds and Mr. Tombe came."

Barton further testified that in 1931 he was induced to pay $1300 on the notes by the promise of the president of the Missouri State Life to reemploy him, and that the promise was not kept.

The defendant, Artie E. Barton, testified she executed the deed of trust and that she had no knowledge of the transaction except what her husband told her.

The claim that fraud in obtaining the notes was shown is based upon the questions and answers quoted *supra,* particularly on the question, "Did he (Carter) tell you about the law prohibiting him making it for longer," and the answer, "Yes, that is what he said, the insurance department."

The meaning of the answer is not clear. The question called for a direct answer, yes or no, and not for what Carter said. If Carter stated the law prohibited the employment of Barton for a period of more than "one year at a time" the statement was false. But if Carter referred to the rules of the insurance department then the statement was not, so far as the record shows, untrue. But if Carter on the occasion referred to in the answer had said the law prohibited the making of a five-year contract of employment we would, nevertheless, not disturb the judgment. This because Barton testified the statement was made *after* the execution of exhibit 12, the deed of trust. The statement, therefore, whether true or false, was not sufficient to sustain the defense of fraud.

The deed of trust was foreclosed by public sale in the manner provided therein. Rees W. Barton was a bidder at the sale. He testified his last bid was $4400; that a representative of the Missouri State Life then bid $4450 and that that bid was accepted by the trustee who made the sale. The credit allowed on the notes from the proceeds of the sale was $3999, less the cost of foreclosure.

M. M. Beavers, the trustee who made the sale, testified C. C. Jennings, for the Missouri State Life, bid $3999, and that that was the highest bid.

C. C. Jennings testified he bid $3999; that the last bid made by Barton was $3998. The trustee's deed, the recitals of which are *prima facie* true, was introduced in evidence but is not in the printed record. The chancellor saw that deed and we therefore assume the statements therein in respect to the amount of the bid were in harmony with the evidence of the trustee and the successful bidder. The preponderance of the evidence shows the bid was $3999.

The insistence that the transaction was in violation of the provisions of section 5684, Revised Statutes 1929, is based on the fact that the salary of Rees W. Barton was increased from $200 to $350 per month, and that the amount of the increase was to be applied as payments on the notes. The down payment of $500 was made before Barton was paid an increase in salary; and he paid $1000 or $1500 after the termination of his employment in March, 1929. Upon receiving the deed he took possession of and thereafter cultivated the farm, endeavored to sell it to a third person, and finally offered to convey it to the insurance company in payment of his debt. These acts are not consistent with the claim that the transaction was merely colorable, not *bona fide*.

After this suit was brought, plaintiff became the owner of the notes, and by leave of court "was substituted as party plaintiff." The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. *Shain, P. J.,* and *Bland, J.,* concur; *Kemp, J.,* not sitting.